

**ARCCA, INCORPORATED**
2288 SECOND STREET PIKE
P.O. BOX 78
PENNS PARK, PA 18943
**PHONE** 215-598-9750 **FAX** 215-598-9751
www.arcca.com

April 7, 2022

Michael L. McCoy, Esquire
Wicker, Smith, O'Hara, McCoy & Ford PA
2800 Ponce de Leon Blvd.
Suite 800
Coral Gables, FL 33134

    Re:  *Guzman, Evelyn E. vs. Holiday CVS, LLC*
          ARCCA File No.: 4607-212

Dear Mr. McCoy:

Thank you for the opportunity to participate in the above-referenced matter. Your firm hired ARCCA, Incorporated to perform an analysis of the subject fall incident in relation to Ms. Evelyn Guzman. This analysis is based on information currently available to ARCCA, and is only to be issued in its entirety. However, ARCCA reserves the right to supplement or revise this information if additional material becomes available.

The opinions given are based on my analysis of the available materials using scientific and engineering methodologies generally accepted in the scientific community. These opinions are also based on my education, experience, background, and knowledge of biomechanics, human factors and kinematics, and human injury mechanisms and tolerance. I am presently employed as a Senior Human Factors Consultant for an engineering firm known as ARCCA, Inc. I obtained a Doctor of Philosophy degree in Industrial and Systems Engineering, Human Factors Option from Virginia Tech and a Master of Science degree in Industrial and Systems Engineering, with an emphasis in Safety Engineering from Virginia Tech. I also received a Master of Science degree in Mathematics from Virginia Tech and a Bachelor of Arts in Mathematics from the University of Connecticut. I have completed advanced coursework in the fields of musculoskeletal biomechanics, human factors, safety, kinesiology, physiology, ergonomics, occupational biomechanics, and impact biomechanics. I am a Certified Professional Ergonomist (CPE) and a member of the American Society of Biomechanics, American Society of Safety Professionals, Human Factors and Ergonomics Society, ASTM International F13 Committee on Pedestrian/Walkway Safety, and IEA Slips, Trips and Falls Committee. I was a National Academies member of the Committee on Review of the NIOSH Construction Research Program, NIOSH Study Section Grant Reviewer, and in 2011 was designated as one of "100 Women Making a Difference in the Safety, Health and Environmental Profession" by ASSE's Women in Safety Engineering.

While at Virginia Tech, I taught courses to both undergraduate and graduate students related to Human Factors Engineering, Industrial Engineering, and Occupational Biomechanics. I performed experimental three-dimensional motion analyses, as well as extensive kinematic and kinetic studies of the human body. My testing and research have been performed with human subjects. These tests and research studies have added to my formal education in biomechanics and injury causation. As such, I am very familiar with the theory and application of human tolerance to the areas of slip, trip, and fall incidents and ergonomics, as well as the techniques and processes for evaluating mechanisms of injury using scientifically accepted techniques to assess the potential for injury during a particular incident.

Michael L. McCoy
April 7, 2022
Page 2



Upon graduating from Virginia Tech, I worked for approximately 10 years at the Liberty Mutual Research Institute for Safety in Hopkinton, Massachusetts. During my tenure at Liberty Mutual, I completed multiple research projects that examined the mechanisms of balance control on level and elevated surfaces, including slips and falls, and working on ladders. This included the influence of individual, task, and environmental factors. Completion of these projects required knowledge, use, and application of ANSI and ASTM standards to accurately translate real-world situations to laboratory scenarios and apply laboratory findings to real-world circumstances and conditions. Motivation for the research projects was partially derived from the construction industry and integrated site visits and consultations with field representatives.

I also have extensive experience related to distracted walking, assessment of physical and mental workload, and effects of dual-tasking on performance. I have published in the areas of postural control, gait analysis, occupational biomechanics, and human factors and ergonomics, and have given multiple technical presentations at domestic and international scientific conferences. While at ARCCA, I continue to conduct technical lectures dealing with the causation and prevention of injury trauma.

**Incident Description:**

According to the materials reviewed, on November 8, 2020, Ms. Evelyn Guzman, a 47-year-old woman at the time, reportedly tripped and fell over a pallet being used as part of a display within CVS Pharmacy ("CVS") located at 8765 S. Dixie Highway in Miami, Florida. [Figure 1] Ms. Guzman testified that she was wearing contact lenses and sandals at the time of the subject incident. The subject pallet display was a permanent component of the store. According to Baptist Hospital of Miami records dated November 9, 2020, Ms. Guzman was 64 inches in height and weighed approximately 155 pounds 7 ounces at the time of the subject incident.



**Figure 1. Subject CVS [Photograph taken at ARCCA inspection].**

Michael L. McCoy
April 7, 2022
Page 3



**Materials Reviewed:**

As part of my analysis in this matter, I performed the following tasks and reviewed numerous documentary materials, including, but not limited to, the following:

- Summons and Complaint
- Plaintiff's Verified Answers to Defendant's Interrogatories
- Defendant's, Holiday CVS, LLC, Answer to Plaintiff's Initial Interrogatories
- Deposition Transcript of Evelyn Guzman taken on November 18, 2021
- Deposition Exhibits
- Medical records pertaining to Evelyn Guzman
- ARCCA Site Inspection conducted on April 5, 2022
- Publicly available literature, including, but not limited to, the documents cited within the report, learned treatises, textbooks, and scientific standards.

**Deposition Testimony and Findings:**

Ms. Guzman testified that she lived near the subject CVS and frequented the store regularly. Ms. Guzman further testified that she went to the CVS on the day of the subject incident, although she could not recall at what time, to buy a back massager that she had seen during a previous visit. Ms. Guzman testified that she was not carrying a purse. According to Ms. Guzman, when she entered the store she went directly to the location of the back massagers and after picking one up began to walk towards the check out. It is noted that later in her testimony, Ms. Guzman stated that after her fall she went to the pharmacy to get her medicine before leaving the store.

Ms. Guzman testified that after entering the store she walked by a few aisles and then turned right and walked almost to the end of the aisle before reaching the back massagers. Ms. Guzman further testified that after picking up the back massager, which was approximately 12 inches x 12 inches, she was carrying it in front of her with both hands when she took a right after leaving the aisle and fell. According to Ms. Guzman, she was in the store for approximately 10 minutes before her fall. Ms. Guzman testified that she tripped on a wooden pallet located on the floor. "I walked towards the aisle. I looked at it, I grabbed it, I started walking to check out. That's when I fell." [Guzman dep p23] Ms. Guzman further testified that her "foot hit the pallet, my whole body fell, and I flew from pretty much one extreme to the end where the side of the wood encrusted my leg." [Guzman dep p24] According to Ms. Guzman, she did not have time to brace herself and her entire body initially struck the ground. Ms. Guzman testified that she hit her chin and the back massager was crushed during the fall. Ms. Guzman further testified that the pallet was towards the side and back of the store near the refrigerated area. According to Ms. Guzman, the pallet was a brown, light wood color placed on a gray carpet. Ms. Guzman testified that the pallet in Figure 2 was the subject pallet but she did not recall the same case of water or yellow sign. According to Ms. Guzman, at the time of the subject incident she recalled there being a smaller 6-pack of water on the pallet and did not recall there being a sign.

Michael L. McCoy
April 7, 2022
Page 4





**Figure 2. Subject pallet. [Defense Exhibit 1]**

Ms. Guzman testified that she was looking straight ahead when she tripped and fell. Ms. Guzman further testified that there was nothing obstructing her vision, including the back massager, although later in her testimony, she indicated that she was wearing a mask due to COVID requirements, which "obstructs your vision to see low-level items". [Guzman dep p29] Ms. Guzman testified that she never noticed any pallets in the store before. According to Ms. Guzman, after she got up she walked to the back of the store to get her medicine but had to wait for 20 minutes. Ms. Guzman testified that after getting her medicine, she took a photograph of the pallet, which was still on the floor in the same location. Ms. Guzman further testified that she spoke to the store manager but did not request EMS. According to Ms. Guzman, she drove herself home and went to the emergency room the following day.

As part of my investigation, on April 5, 2022, Mr. Timothy Tresierras conducted a site inspection of the subject location at my direction, particularly an exemplar wooden pallet being used as part of the end cap display upon which Ms. Guzman reportedly tripped, and the aisle in which she walked towards the end cap display immediately prior to her fall. At the time of the subject incident, the subject end cap palletized display was positioned in between aisles #16 and #17. The aisles within the store were oriented generally parallel to the pharmacy, which was located near the back of the store. Based on the materials reviewed, Ms. Guzman turned right from the main central aisle of the store and walked in aisle #16 [Figure 3] towards the display of back massagers, which was located on shelves at the end of the aisle on the right-hand side. [Figure 4] Aisle #16 was approximately 34 feet 6 inches long and 4 feet 5 ¼ inches wide, measured prior to the pallet on the end cap.

Michael L. McCoy
April 7, 2022
Page 5





**Figure 3. View in aisle #16 walking towards display of back massagers. [Photograph taken at ARCCA inspection]**



**Figure 4. Back massagers displayed in aisle 16. [Photograph taken at ARCCA inspection]**

At the time of the subject incident, there was an end cap palletized display for cases of water located at the end of the aisle. [See Figure 2] At the time of the ARCCA site inspection, the subject end cap display, containing an exemplar pallet similar to that in place at the time of the subject incident, was full of product upon arrival but cases of water were removed to match the condition that was present at the time of the subject incident, per Figure 2. [Figure 5] The pallet display was located on a gray carpet that covered the aisle floor. Directly across from aisle #16 were the refrigerator/freezer cases located against the right-hand side wall. The refrigerator/freezer cases were approximately 5 feet 7 inches from the edge of the pallet. The pallet was constructed of wooden slats, most of which had been painted blue. The pallet was approximately 4 feet long and 3 feet 4 inches wide. A black pallet edge cover was positioned similar to Figure 2, which depicts its position after the subject incident. The corner of the pallet cover extended the pallet display by approximately ½ inch and was approximately 6 inches tall. The corner of the pallet cover extended 6 inches on either side of the pallet corner. The height of the pallet was approximately 5 5/8" above the floor. There was a space along the side of the pallet between the bottom of the pallet located ¾ inch above the carpet and the top of the pallet which started at 4 ¼ inches above the carpeted floor.

Michael L. McCoy
April 7, 2022
Page 6



 

**Figure 5. Exemplar pallet and display. [Photograph taken at ARCCA inspection]**

The shelving display containing the back massagers was located approximately 32 feet from the beginning of aisle #16. The right-hand side of the shelving display was approximately 13 feet 11 inches from the end of the display and the subject palletized display. The display was comprised of five shelves, with the lowest shelf at 5 ½ inches above the floor. The vertical end component of the shelving display was approximately 4 feet and 11 ½ inches tall and 2 ¾ inches wide. The pallet extended 3 inches into the aisle past the shelving display. [Figure 6]



**Figure 6. Pallet protruding horizontally into the aisle relative to the adjacent Shelving. [Photograph taken at ARCCA inspection]**

## Analysis and Discussion:

The scope of my analysis entailed assessing Ms. Evelyn Guzman's fall incident. The scientific method was employed, which enables a systematic examination of the subject incident.[1] In doing so, my analysis considered the facts of the case regarding Ms. Guzman's incident in the context of the laws of physics, fundamental principles of human movement biomechanics, and human factors.

Ms. Guzman alleges that the mechanism of her fall was a trip due to a wooden pallet that was part of an end cap display of water that was located on the floor. Fundamentally, a person's ability to safely navigate through an environment necessitates a complimentary concurrence of an accurate mental construct of the environment through which they are walking in conjunction with the appropriate

---

[1] Carey, S.S. (2004). <u>A Beginner's Guide to Scientific Method</u>. Belmont, CA: Wadsworth.

Michael L. McCoy
April 7, 2022
Page 7



neuromuscular control of limb movements, especially in cases of negotiating an obstacle.[2,3,4,5,6] In other words, a person stepping around an obstacle must have an accurate mental construct of the object's location to enable the neuromuscular control of a limb to sufficiently clear the obstacle. Typically, the visual sensory input is the primary sensory input of this process.[7] The visual identification of structures and objects in an environment in part requires adequate contrast, size, and lighting.[8,9]

Ms. Guzman testified that she lived near the subject CVS and had shopped there several times, sometimes multiple times in a week. The display of bottled water, including the use of a pallet as the base, was a permanent part of the store design and would have been present during Ms. Guzman's prior visits to the store. Ms. Guzman testified that she did not recall seeing pallets in the store during her prior visits, but she testified that she had previously seen the back massager and knew where it was located so she would have been in the vicinity of the palletized display on at least one occasion and should have been aware of the display of bottled water at the end cap.

From a human factors perspective, a person's ability to detect an object depends on the illumination, size, and contrast.[10] Based on the materials reviewed, including the testimony of Ms. Guzman, the pallet was within her visual field as she walked down aisle #16 from the center of the store to the display of massagers, a distance greater than 10 feet. There is no evidence that there were any visual obstructions within the aisle and based on Ms. Guzman's testimony, she was not carrying anything. Therefore, in the moments prior to her picking up the back massager, Ms. Guzman's field of view, even while wearing a mask, would have included the subject pallet, had she been visually scanning her environment.[11,12,13,14,15,16] Based on the visual attributes of the pallet and the surrounding floor surface, there was a contrast between the pallet and the carpeted floor in both color, texture, and pattern. The wooden pallet's surface was not uniform due to the spaces between the wood slats comprising the top of the pallet and the colors used. Most of the subject pallet was painted a bright blue but three of the slats were bare wood and the pallet cover was black. The pallet construction and design contrasted with the repeated design and gray color of the surrounding textured carpeted floor. The black pallet cover, on the corner of the pallet extending into the aisle, also contrasted with the metal aisle shelving unit and the floor. The pallet cover was solid black and contrasted with the creamy color of the adjacent shelving unit and the gray color of the carpeted floor. Based on a review of the materials and observations made at the subject location, the subject pallet (4 ft x 3 ft 4 in) and particularly, the corner of the pallet (6 in x 3 in), were visible and distinctly discernible from the surrounding environment. As previously mentioned, the size of an object plays a role in visually

---

2   Patla, A.E. (1997). Understanding the roles of vision in control of human locomotion. Gait & Posture, 54-69.
3   Land, M.F. (2006). Eye movements and the control of actions in everyday life. Progress in Retinal and Eye Research, 25: 296-324.
4   Ciolek, M.T. (April 1978). Spatial behavior in pedestrian areas. Ekistics, Athens Technological Organization, 45(268): 120-122.
5   Patla, A.E. and Nickers, J.N. (1997). Where and when do we look as we approach and stop over an obstacle in the travel path? NeruoReport, 8, 3661-3665.
6   Geruschat, D. R. et al. Gaze behavior while crossing complex intersections. Optometry and Vision Science, 88(7): 515-528.
7   Patla, A.E. (1996). Understanding the roles of vision in the control of human locomotion. Gait & Posture, 5: 54-69.
8   Woodson, W.E. (1992). Human factors design handbook. McGraw-Hill, NY.
9   Sanders, M.S. and McCormick, E.J. (1993). Human factors in engineering and design: Seventh edition, McGraw-Hill, NY.
10  Woodson, W.E. (1992). Human factors design handbook. McGraw-Hill, NY.
11  Turano, K.A. et al. (2001). Direction of gaze while walking a simple route. Optometry and Vision Science, 78(9): 667-675.
12  Sanders, M.S. and McCormick, E.J. (1993). Human factors in engineering and design: Seventh edition, McGraw-Hill, NY.
13  Kroemer, K. et al. (1994). Ergonomics: How to Design for Ease & Efficiency. Prentice Hall, Englewood Cliffs, NJ.
14  Woodson, W.E. (1992). Human factors design handbook. McGraw-Hill, NY.
15  Klatt, Brooke N, and Eric R Anson. "Navigating Through a COVID-19 World: Avoiding Obstacles." Journal of neurologic physical therapy: JNPT vol. 45,1 (2021): 36-40
16  Nicholas, D.A., et al. (2020). Keep your head down: Maintaining gait stability in challenging conditions. Human Movement Science, 73.

id=1e95bc39849b857c

Michael L. McCoy
April 7, 2022
Page 8



identifying an object within its environment. Based on human factors data regarding the relationship between character heights and viewing distance, conditions greater than one inch would have been visible to Ms. Guzman at a distance of 10 feet under good lighting conditions.[17] Therefore, if Ms. Guzman had been visually scanning her environment as she approached the end of the aisle, she would have been able to observe and perceive the pallet located at the end cap based on the size, color, and contrast.

Ms. Guzman testified to selecting a back massager for purchase and picking it up prior to her fall. Given the location of the back massagers on the shelving adjacent to the end cap and the pallet, as Ms. Guzman began to walk towards the checkout area the pallet would have again been in her visual field. [Figure 7] Based on human factors data regarding the relationship between character heights and viewing distance, conditions greater than 0.4 inch would have been visible to Ms. Guzman at a distance of 5 feet under good lighting conditions.[18] Based on the analysis above, if Ms. Guzman had been visually scanning her environment after picking up the back massager and prior to walking towards the check out, she would have been able to observe and perceive the pallet located at the end cap based on the size, color, and contrast. Consequently, the pallet within its environment afforded Ms. Guzman, as well as the other customers that walked through the area without incident, adequate visual cues signifying its presence.



**Figure 7. View of exemplar pallet while standing in aisle 16 by the massager shelving display. [Screenshot from video taken at ARCCA inspection]**

The subject pallet, even without any cases of water on it, did not represent a dangerous condition for customers exercising a reasonable degree of attentiveness. Ms. Guzman testified that there were people in the store but that at the time of the subject incident there were no obstructions to her vision, including the back massager that she was holding in front of her. Thus, Ms. Guzman was performing the low workload task of walking with minimal distractions. Ultimately, a person's successful navigation through their environment requires an adequate degree of cognitive attentiveness. To this end, Ms. Guzman testified that she was looking straight ahead and not looking down at her feet. Based on the visual attributes of the pallet, if Ms. Guzman had been visually scanning her environment for potential obstructions within her travel path, she would have seen the blue pallet contrasted against the gray carpeted floor. Therefore, if Ms. Guzman had been visually scanning her environment as she approached the of the aisle, and when she began to walk towards the checkout after picking up a back massager, she would have been able to observe, perceive, and avoid the pallet based on the size, color,

---

[17] Woodson, W.E. (1992). Human factors design handbook. McGraw-Hill, NY.
[18] Woodson, W.E. (1992). Human factors design handbook. McGraw-Hill, NY.

Michael L. McCoy
April 7, 2022
Page 9



and contrast. Therefore, if Ms. Guzman's fall was related to the pallet, which was part of the end cap display, her lack of attentiveness was a causative factor. The visual cues present would have been prevalent and conspicuous, so anyone who was walking in the area and being reasonably cautious should have observed, perceived, and reacted to the palletized end cap display and been able to avoid a fall related to interacting with it.

**Conclusions:**

Based upon a reasonable degree of scientific certainty, and the information received and reviewed to date, I conclude the following:

1. On November 8, 2020, Ms. Evelyn Guzman, a 47-year-old woman at the time, reportedly tripped and fell over a pallet being used as part of a display within the CVS Pharmacy ("CVS") located at 8765 S. Dixie Highway in Miami, Florida.

2. The pallet, as part of the end cap display, would have been conspicuous and should have been observed, perceived, and reacted to by Ms. Guzman had she been reasonably cautious and scanning her environment, including looking down at her feet.

3. The pallet, as part of the end cap display, did not create a dangerous condition.

4. Ms. Guzman's actions, or lack thereof, were a causative factor of the subject fall incident.

If you have any questions, require additional assistance, or if any additional information becomes available, please do not hesitate to call.

Sincerely,

Angela Levitan

Angela Levitan, Ph.D., CPE
Senior Human Factors Consultant